Good morning, Your Honors. May it please the Court, my name is Richard Rosenthal on behalf of the appellants. I'd like to reserve four minutes for rebuttal, please. Okay. Keep an eye on the clock and I'll try and help you. Yes, Your Honor. Your Honors, this Court and the Nevada courts have held many times over that if a litigant fails to prove his case at trial, he can't simply go back for a second bite at the apple by trying to create what he views as new or better evidence for the second go-round. The issue in front of the Nevada courts was whether or not there had been a failure of proof with regard to actually establishing ownership of a claim. As I understand the record, a subsequent assignment was entered issued by the, what is it, FDIC? FDIC. So we have essentially new proof that the claim is owned and then a lawsuit brought against the guarantors of the debt. And so that prior failure of proof has been cured on the basis of a new assignment. So I'm having a hard time trying to understand why the issue is collaterally stopped. And it was, wasn't it dismissed without prejudice also, the previous case? It wasn't that it was refiled after the assignment that cured whatever, allegedly cured whatever problems there were within the statute of limitations? You don't have a statute of limitations claim still, do you? We do have a statute of limitations defense still viable, and Your Honor is correct as to the second State court action was dismissed nominally without prejudice. That was Judge Vega's case. There is one tweak that I have to respond to, Judge Tallman, your recitation of the facts, which is 98 percent correct. Okay. I only have 98 percent correct. The 2 percent difference is that there were two State court actions, the one before Judge Gonzalez, the first State court action, and then the second, the one before Judge Vega. The second one before Judge Vega was not based on ownership of the loan documents. It was based on the guarantee, the exact same claim that we're here in Federal court on. And the reason why issue preclusion applies, and we believe applies per force, is that the creation of the new evidence, the 2011 assignment and the allonge, does not create a new issue under issue preclusion. Just new evidence is not a new issue. I thought the underlying suit, though, was brought for breach of the loan agreement. The first State court action. Not breach of the guarantees. The guarantees are separate contracts, are they not? Respectfully, it is a separate contract. But respectfully, Your Honor, the second State court action, the one before Judge Vega, was for breach of the guarantee. It was the exact image of this Federal action before Judge Gordon. And dismissed without prejudice. It was dismissed without prejudice. However, that, first of all, for issue preclusion purposes under Nevada law, that is not viewed nearly as strictly as one might ordinarily envision. And the only reason it was dismissed without prejudice, as Judge Vega made clear in her ruling, was that there was still the first State court action which was pending in the Nevada Supreme Court, or the rights to appeal to the Nevada Supreme Court were still pending. And she said, because this guarantee essentially is inextricably linked to the question of whether the underlying loan documents were owned by B&T, B&T needs to avail themselves of their appellate rights in the first State court action. And, indeed, they did in the Nevada Supreme Court. The Nevada Supreme Court affirmed the judgment of Judge Gonzalez from the first action, saying there was no ownership. B&T dropped the ball. They did not prove ownership at trial, and they lost as a matter of law. In our view, that is unquestionably either the first State court action or the second State court action, which is directly what was happening in this Federal case. Same plaintiff, same defendants, same document, same cause of action. Everything is the same. That operates as preclusion. And it's not just my saying this. I mean, this Court has held the same in the Arduini case, in which it referenced the earlier Nevada Supreme Court case Alcantara, where you had the same sort of scenario. Alcantara was the Wal-Mart case where there had been a fight in the parking lot. There was a question of whether Wal-Mart was negligent. Wal-Mart lost the first time. Excuse me. Wal-Mart prevailed. The plaintiff lost. And then the plaintiff came back with a new theory and said, oh, instead of negligence, we're going to plead a Federal case for nondelegable duty. And the Nevada Supreme Court said that's just another way of proving the same issue you were trying before. Nondelegable duty is just a means to prove negligence. You are barred. That is what has happened here. They are just trying to prove another way of proving ownership of the guarantee, which was ruled against them in both instances in the Nevada State courts. I think maybe the most factually on-point case is a case from California cited by this Court in Arduini and also the Nevada Supreme Court in Alcantara, and that's the Evans case. Evans, there was a wrongful death suit that failed, and then the plaintiffs came in afterwards, filed a new lawsuit and said, look, we've got a new autopsy, and the new autopsy shows that there was asbestosis. And so now we want to go back and prove our case. And the California court said, no, this is barred. You had your opportunity. You get your one chance at trial. This isn't like Sunday golf. You don't get a mulligan. And this Court has said, yes, Your Honor. Sotomayor, didn't those go to trial? I beg your pardon? Didn't the Wal-Mart case go to trial? I don't recall whether it was at trial or whether it was on summary judgment. Okay. Thank you. But in any event, it was on the merits. Okay. And this Court had a similar issue in Arduini where there were new allegations about demand futility on the board of directors. And this Court said that just because you've come up with new allegations or a new theory or new proof, that doesn't mean there's a new issue. And that's what issue preclusion is all about. You don't get to raise this the first time. But if branch banking was dismissed from the first action essentially for lack of standing. It wasn't standing, Your Honor. Well, but the conclusion is that you don't own the claim. Right. Therefore, you don't have any right to be in this court. Then I'm not sure that we can say that liability under the guarantee was ever litigated. Judge Gonzalez and the Nevada Supreme Court disagreed with that view. Judge Gonzalez was very specific. In fact, at the trial, at the conclusion, it was on a Rule 52, and the Nevada rules are essentially the same as the Federal rules. We raised a Rule 52 motion saying they didn't prove ownership. And Judge Gonzalez granted that. And Mr. Garrard, BB&T's counsel, whom they've since sued for malpractice, said, well, Your Honor, we can just come up with a new document and try a new case, presaging exactly what they were doing. And Judge Gonzalez said, no, you can't. I'm ruling on the merits. I'm not saying this is a matter of standing. You keep trying to couch it, Mr. Garrard, as a matter of standing. This is a failure to prove an essential element of your case. You can't come back. You would have a preclusion problem. Let me give you an example that may illustrate it, Judge Tallman. I know in your previous life you were a former Federal prosecutor. Imagine you had to prosecute a case for destruction of Federal property, and you went to trial and you neglected to prove up that the object destroyed was actually owned by the Federal Government. And there's a motion for judgment of acquittal, presumably under Rule 29. Granted, the defendant is acquitted. You wouldn't be able to do that. You have no way of knowing this, but you have just opened a door into a disagreement that Judge Tallman and I had years ago. And I can tell you conclusively, I don't remember the name of the case, collateral estoppel does not apply in criminal cases. I defer to your vastly superior expertise in the area of criminal law. I know certainly the Double Jeopardy Clause would prevent somebody from going back and doing it. And I can tell you that the Federal Government, on appeal, confessed error on me five days before the embankment hearing. I didn't mean to open an old wound, I'm sorry. You have truly opened an old wound. You remember these things, right. And we're still good colleagues about an interesting issue. Okay. The point being that, obviously, there's a difference in the criminal context with the Double Jeopardy Clause, where you wouldn't be able to go back and reprove and say, oh, I found the deed where, in fact, it is Federally owned land. But in those principles that animate issue preclusion apply with full force in civil cases, too, which is the issue of the desire for finality, the risk of inconsistent judgments, avoiding vexation of litigants. And these are the terms that this Court has used about it. Let me ask you a practical question. I think I know the answer to it, but I want to double-check. The property, the loan at issue is about $45 million and change, and the property was eventually sold through bankruptcy for about $13.5 million. I think that's right. So your clients basically guaranteed the $45 million loan, and if we rule in your favor, they walk away, and I guess the taxpayers get stuck for the loan. I can't speak authoritatively on that. I do know that when BB&C attempted to acquire this loan, they paid $11 million. They have already been paid, I think, $22 or $23 by the FDIC through its loan assistance program. So it's not like they're, you know ---- Breyer, but it's only a few million, not 10s of millions. But let me suggest, Your Honor, that this underscores the need for trial counsel to bring his best case on day one. It's not like, you know, my guys have been getting off scot-free. They've been living with this for over 10 years, and frankly, eight years ago, they thought they had prevailed because the Nevada State Courts, all the way up to the Nevada Supreme Court, said, you win, only to be held back across the street to the federal court and told, no, you're on the hook personally for $45 million. So this has been a ---- And as I recall, part of the counsel's negligence was the failure to produce in discovery the documents that he tried to introduce late in the game, and the court said, you didn't properly disclose that evidence. Right. I'm not going to opine on whether it was negligent or not, for obvious reasons. Yeah, I didn't realize that. But that's correct. Judge Gonzales, in the first State court trial, said, you didn't disclose these documents, we're not going to have trial by ambush here, you're trying to do it on the night of. And in fact, when Judge Gonzales said that the original purchase and sale agreement was insufficiently proved, BB&T went home and, quote, unquote, found a new document, created a new document that night, and then started waving it around saying, well, we've got this new assignment. And Judge Gonzales says, we're not going to play that way here, you have to divulge these things under the rules, which was, again, affirmed by the Nevada Supreme Court saying she had not abused her discretion in excluding that. And what we have here, frankly, is another episode of that. We prevailed twice on these issues in Nevada court, and then all of a sudden we get a new assignment, the 2011 assignment. When does this end? In theory, if Your Honors were to reverse and enter judgment for my clients, they could come up with a 2018 assignment and find a new Federal court or a new forum to run to and start a new action. But in 2018, they would have a statute of limitation problem, would they not, even with the benefit of the FIRERA extension? They sure would. We think they have a statute of limitations problem here anyway, but frankly, Your Honors don't have to get to it if you decide it on the issue of preclusion. If you want to save four minutes, you're down to three minutes. I will. Thank you, Your Honor. I appreciate it. All right. Let's hear from the other side. Your Honor, may it please the Court, Joseph Wendt, representing Branch Making and Trust Company. Judge Gordon at the District Court correctly ruled on this case. The principal facts that support the judgment that he entered were the subject of a stipulation between the parties, and that's in the record of the supplemental excerpts, pages 1-3. There's been no challenge to these crucial facts. The loan fund didn't like the guarantors wanted. They just failed to pay like they agreed. What this appeal is doing is seeking to apply these legal theories to avoid that repayment obligation. And during the opening here. What's your response to the argument that the first lawsuit in front of Judge Gonzales involved not only the breach of the underlying loan contract, but also the obligation to pay on the guarantee? Guarantee was not a component of the first state court case. What the first state court case was about was lien priority. There's an important reason why the guarantee would not have been a component of the first state court case, and that's the one-action rule under Nevada would have prevented it. The deeds of trust, real property security were still in play at that time, so an action on the guarantee would have been prevented by Nevada's one-action rule. So that's set forth in the record at page 66, where the state court identifies what precisely were the claims that were at issue in that first case, and it was about lien priority. And the primary issue for the state court was whether BB&T had satisfied its evidentiary burden, demonstrating that it received an assignment of the 2007 Colonial Bank Deed of Trust, as evidenced by the purchase and assumption agreement that was entered into between the FDIC and BB&T with respect to Colonial Bank, that was incomplete and without its accompanying schedules. That's set forth in the record at page 67. In its order of affirmance, the Nevada Supreme Court concluded that the state court decision that the incomplete purchase and assumption agreement by itself, without its schedules, did not prove that BB&T received an assignment of the construction loan was not clearly erroneous. That's again in the record at page 60. In its order denying en banc reconsideration, the Nevada Supreme Court again stated that the decision by the state court that the incomplete purchase and assumption agreement by itself, without its schedules, was insufficient to prove an assignment of the 2007 Colonial Bank Deed of Trust was not clearly erroneous. If your client had prevailed in the first state court proceeding, what relief would it have obtained? The relief that would have been obtained is the 2007 Colonial Bank Deed of Trust would have been in first position on the subject real property. The way the record reflected at the time, it was in junior position behind a deed. Are you saying that if you had prevailed and you had a final judgment, that would not have authorized you to collect on the guarantee? We would have had to foreclose first on the property, and once that had concluded, we would have had a deficiency balance that the bank could have then pursued. But until the deed of trust situation had been resolved, the priority dispute that was in play, which is what that state court case was about, until that was finalized, no action on the guarantee could have commenced because of the problem with the one-action rule. So the evidence that was presented to the state court consisted of the incomplete purchase and assumption agreement. And that's what's recited in the record and specifically at page 67. Contrast that to what Judge Gordon had at the district court. He had the 2011 assignment, and he had an alleged promissory note, again cited in the record at page 30. There's different evidence. So if A sues B in a breach of contract suit, and the result of the proceeding is that the court determines that A hasn't proved the existence of a contract and grants judgment to B, could A later go to a different court, state or federal, and say, I now have all the information to show that there really was a contract between the two of us? I think the answer to that question is no. But that's a different question. Go ahead. Tell me how that's different. Well, the question that was presented in the state court was whether BB&T proved ownership of the 2007 Colonial Bank deed of trust. Not that no deed of trust existed. That's the difference. And I think that's a fundamental mistake that the guarantors have been making here, is that they thought that the state court decided that they don't owe anybody anything. And that's not at all what the state court decided. What the state court decided was that BB&T at that juncture had not sufficiently demonstrated that it owned the underlying loan documents. That's the difference. Because there was no decision that no loan documents exist, and there was no decision that they never breached their guarantee. It was just that BB&T had not sufficiently proved ownership of the subject loan documents. What was the second case? The second case that was brought before Judge Vega was dismissed based on standing. And what she says in the record is very enlightening. At page 38 of the record, what she says is that if the FDIC wants to bring this case, they can. And that's essentially what we have here, is the 2011 assignment identifies with great specificity the transfer of this underlying loan documents from the FDIC to BB&T. I would Your client's position is that no collateral or stockhold preclusion. Issue preclusion is not applicable here. It requires the establishment of four elements. And at least three of those elements have not been met. What about Rooker-Feldman? Rooker-Feldman is inapplicable as well. The core of that argument is that Rooker-Feldman bars the district court case because it is a de facto appeal of the state court decision. BB&T's injury does not stem from an error in a state court decision as required by both this court and Supreme Court precedent. Instead, BB&T's injury stems from the conduct of the guarantors. They injured BB&T when they failed to pay what was owed at maturity, and that was in January of 2009. The guarantors portrayed this district court case as an inappropriate collateral attack on what the state court decided, such that Rooker-Feldman should bar it. Rooker-Feldman is to be applied narrowly, and it should be confined to the kinds of cases from which it got its name, specific with state court losers, complaining of injuries from state court decisions, and inviting district court review and rejection of those decisions. This Court's case in Noel established a two-part test for whether Rooker-Feldman should apply. First, the court must find that the district court case constitutes a de facto appeal, and secondly, that the district court case seeks to litigate an issue that's inextricably intertwined with the state court decision. So a crucial issue for this Court is to determine whether the district court case indeed is a de facto appeal of the state court case. A de facto appeal exists when a federal plaintiff asserts as a legal wrong an erroneous decision by a state court and seeks relief from a state court decision. If, by contrast, a federal plaintiff asserts as a legal wrong illegal acts or omissions of adverse parties, Rooker-Feldman is inapplicable. This case, this district court case, is not seeking relief from a state court judgment. Instead, what BB&T did is asserted a wrong by the guarantor, specifically their failure to pay what was owed at maturity. And that's at page 94 of the record. This district court case is not an attempt to complain of an erroneous decision by the state court. There was no allegation made of the district court, no request to Judge Gordon to decide that something the state court did was wrong. The state court decision is what it is. The district court, then BB&T, through this district court case, is not seeking to set it aside. The type of relief If I can summarize what you're saying, the result of the district court action was to declare that whoever owned the construction loan was not in first priority in the lien on the property. Not that there had been an adjudication as to who owed what for breach of the loan. With respect to the state court, correct. State court was concerned with lien priority. Not with the ownership. Not with ownership of the underlying loan documents. Well, she found that, fundamentally, that BB&T failed to prove that it owned the loan documents, so she couldn't proceed any further with the underlying claims about lien priority. And so that's what was presented to her, though. Well, no. She went one step further, did she not? She basically said, because of the failure of proof to show ownership, then the competing lien holder is first priority. And she continued on and made those decisions, correct. But that doesn't adjudicate what, if anything, branch banking is owed under the breach of the construction. Correct. Correct. And Judge Gordon correctly identified this. He noted in the record at page 32 that the transfer of the guarantee and what was owed under the terms of the guarantee was never adjudicated as part of the state court case. The guarantee was not presented to her. So, just in summing up again on the Rooker-Feldman Doctrine's issue here. I think we understand your arguments on that. So, let me go back to the issue of preclusion contention about identical issues. What the state court was asked to do was interpret the terms of an incomplete purchase and assumption agreement in order to determine the assets and liabilities that were transferred to BB&T. Judge Gordon was not asked to review an incomplete purchase and assumption agreement. What Judge Gordon had was the 2011 assignment and launched the promissory note and other related documents. So, the issue that was presented is not identical. Identical means that it has to be something more than just that the issues share commonalities. The identicality prong of the issue preclusion test as stated by Nevada law has not been met here. The matter in dispute is not the same. The matter in dispute before the state court, whether that incomplete purchase and assumption agreement was sufficient to prove BB&T's ownership of the 2007 Colonial Bank Deed of Trust is not what Judge Gordon was asked to decide. What he was asked to decide was whether the 2011 assignment, whether they launched the was sufficient evidence of BB&T's ownership of the note in the guarantee. What BB&T alleged more than just more persuasive evidence existed about the purchase and assumption agreement. The district court case consists of more than just additional allegations that the incomplete purchase and assumption agreement is somehow sufficient evidence to transfer the underlying loan documents. The matter in dispute in the district court case is different from what the state court decided and concerns evidence that was not available to the state court. Thus, we submit that the identicality prong of the issue preclusion test has not been met. There's other elements that have to be established in order for issue preclusion to apply. There has to be a final adjudication on the merits. The state court found, essentially, that BB&T had failed to establish standing. The state court decision arose out of a motion made pursuant to Nevada Rule of Civil Procedure 52, which focused on whether BB&T had proved standing. The decision should not be limited to standing, but then also be on the merits of the underlying claims. Finding that a party lacked standing should mean that the court is not ruling on the merits of the underlying claims. And it was this lack of standing that the state court had found that prompted the dismissal of BB&T's claims. That's set forth in the record at pages 67 and 69. Further standing is curable. New facts that post-state the state court complaint were submitted to Judge Gordon. I would also just note for the record here that the second state court case was dismissed without prejudice, which should mean that it does not qualify as an adjudication on the merits. That's accurately reflected in the record by the second state court judge, where she said exactly that, that if the FDIC wants to bring this case, they can. That's at page 38 of the record. Issue preclusion under Nevada law also requires the establishment of an element that the issue must have been actually and necessarily litigated. The 2011 assignment, they launched the promissory note. Those items were not actually litigated. Whether BB&T received a transfer of the guarantee, as evidenced by the 2011 assignment, and they launched the promissory note was not raised and submitted to the state court for determination. The issue she had was whether the incomplete purchase and assumption agreement by itself was sufficient to evidence the assignment of the 2007 colonial bank deed of trust. Judge Gordon correctly pointed out that this means that these items, the 2011 assignment, the allonge, were not actually litigated. And they could not have been actually litigated then. The transfer of the guarantee was not a component of that lien priority case. Further, the 2011 assignment did not exist in 2010 when the state court was rendering its decision. It's not necessary to what the state court decided. The practical effect of the subsequent, you call them allonges, or subsequent assignments, sort of the equivalent of what courts would call a non-proton correction of the assignment of an error that occurred in the first litigation where the bank simply didn't produce the proof that it owned the loan. Well, notes are negotiable instruments, right? Nothing that the state court decided would have prohibited BB&T from participating in commerce and obtaining the underlying loan documents. The court had, BB&T had repeatedly been told then that the evidence it had, the purchase and assumption agreement, which, by the way, is a crucial document with the FDIC with respect to failing banks, was insufficient to evidence to transfer the subject deed of trust. Well, then there had to be more specificity. So BB&T negotiated with the FDIC and obtained the language that's set forth in the 2011 assignment. Nothing the state court decided would have rendered BB&T unavailable to ever purchase these loan documents in the future, which is what the guarantors are asking. Are you saying in the first case you did not own? No, the evidence existed, and it's always been BB&T's position that it owned the loan documents during the first case. It's just that the evidence that the state court had, she concluded, was insufficient at that time. What BB&T... The documents were not properly produced during discovery and, therefore, were excluded from trial. Correct. That would have established. But they were in existence? But they existed. Correct. Well, they were in existence and presented. She just excluded them. This may be a question more properly for Mr. Rosenthal, so I hope you'll answer it on rebuttal. But suppose that the FDIC, for whatever reason, had issued a subsequent assignment after the Nevada action to yet a third party and purported to assign these loan documents to the third party. Would there have been any issue with regard to issue preclusion if the third party tried to bring an action? So if you had a dispute now between BB&T and then some other third party claiming ownership, well, then there certainly would have been a dispute between BB&T and that third party. So I understand the dispute between BB&T, but would the third party be barred by the Nevada litigation from enforcing the notes? No. One of the elements requires privity, the same parties. And so in that instance, I think there would be a failure of privity that the party against whom the judgment is being applied must have participated in the first case. I think that would have been a problem there. I think that's right. Moreover, the other problem, just briefly in the final seconds, is that issue of the guarantee was not what was placed before the State court. What the State court had was lien priority. And based on that, I would ask the Court to affirm Judge Warner's decision. Thank you very much. May it please the Court, let me begin by answering that question, Judge Tallman. I agree with my brother at the bar. That would not be a collateral estoppel issue preclusion problem, assuming there was no privity between the parties. And that illustrates a problem that my brother at the bar answered to Judge Hawkins' question about what if A sues B, would there be issue preclusion? And he said, no, because the defendant's position, the appellant's position is that they don't owe anything to anybody. That is not our position. Our position is we don't owe anything to BB&T because they failed to prove their case at trial. If it had been assigned to a third party not in privity, we probably wouldn't have a leg to stand on with respect to issue preclusion. That is the problem here, is that they failed to prove their case. And whether you look at the first trial action, which was about ownership, if you look at the record, excerpt from the record, Judge Gonzales is talking about ownership. But even as to the second State court action, and I understand Your Honors asked me questions about whether there's without prejudice language, I would direct Your Honors to page 46 and 47 of our initial brief, in which we cite the Nevada Supreme Court, which has adopted the second restatement view on that question, that the requirement of finality with or without prejudice, it is not a rigid approach. It's not formalistic. It's you look at the context. And in this context, we know that they treated Judge Vega, the second State court action, as final. How do we know? Did they attempt to file an amended pleading? No. They could have. Did they even appeal from Judge Vega's ruling? No. They could have. What did they do? They ran across the street to the Federal courthouse a week later. If Judge Vega entered a dismissal without prejudice, that wouldn't be a final judgment, would it? I disagree with Your Honor. Because Nevada law does not look at the formalism of the label of whether it's dismissal with prejudice or without prejudice. They look to the actual dealings. Is it a final ruling in the sense that it was fully considered? And again, this is at page 46. I'm quoting from the Garcia case, the Nevada Supreme Court. However, the cases she cites holding that a dismissal without prejudice is not an adjudication on the merits are cases dealing with claim preclusion and not issue preclusion. It is widely recognized that the finality requirement is less stringent for issue preclusion than claim preclusion. And they adopted the restatement view. And we've quoted the restatement second of judgments. I won't read it to Your Honors, but you'll see it on pages 46 and 47. And this Court in the Cooper case said the exact same thing. Judge Tallman, you were actually on the panel of the Cooper case. Judge McKeon wrote the opinion. But you are in the room. I remember it like it was yesterday. But this gets to take a look at that. And, Your Honors, you talked to Judge Tallman. You asked the question about nunk-pro-tunk. Isn't this essentially a nunk-pro-tunk? If that were applicable in this context, then you wouldn't have the issue of preclusion. Maine justice would not have overruled you and would have let you prosecute that case for a second time with the better evidence. There is a difference between criminal and civil. I have to begrudgingly admit that now, although I did not admit it to Judge Hawkins at the time. There is indeed a difference. But the principles, while they don't necessarily achieve a constitutional dimension like they do the double jeopardy clause, in the civil context, the principles are the same. Avoiding duplicate. What's your response, though, to his argument that the only thing that was decided in the first round of litigation was who had priority over the liens that otherwise attached to the property, that there was no adjudication of whether or not anybody owed some certain or whether there had, in fact, been a breach? I'm into my red, but two quick responses. One, if you look at the order itself and the transcript, which are in the excerpt of record, you'll see that that is not the way Judge Gonzalez framed her ruling. She said they failed to prove ownership. Judge Vega said the same thing in her order, that this is all derivative of ownership. Second. But a failure to prove ownership doesn't necessarily establish that there has been a breach of the obligation to pay and a some certain that the obligor is now liable to pay to the lender. If you're of that view and if the ruling from Judge Gonzalez doesn't persuade you otherwise, then certainly you have the second State court action, which was a suit on the guarantee, the exact lawsuit we have here. If I overcome the hurdle about finality, the with prejudice, without prejudice, then what you have is a complete mirror image, the exact same lawsuit, same plaintiffs, same defendants, same contract, same theory of liability. That is a textbook case of issue preclusion. Thank you, Your Honors. Thank you both. The case is well argued. We'll submit it for decision and get you an answer as soon as we can. Anybody need a break before we? No. I was just going to suggest that we're going to send this to the Nevada State bar examiners for the next bar exam. Thank you. Okay. Thank you both. The last case on the calendar for argument today is Xiao Hui Chang versus the County of Santa Clara, number 16-17163.
judges: Hawkins, Tallman, Jack